**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DAMIAN URDIN,

Petitioner,

v.

CASE NO: 8:05-CV-84-T-30MSS
Criminal. Case No: 8:00-CR-117-T-30MSS

UNITED STATES OF AMERICA,

Respondent.
_____________________________________/

# ORDER

THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) filed on January 14, 2005, the Government's Response thereto (CV Dkt. #4), and Petitioner's Reply (CV Dkt. #6). The Court has reviewed the briefs and the prior proceedings in the underlying criminal case[1] as required by Rule 4 of the Rules Governing §2255 Proceedings for the United States District Courts. After doing so, the Court concludes that Petitioner's motion is due to be summarily denied without an evidentiary hearing because it plainly appears from the face of the motion and the prior criminal proceedings that Petitioner is entitled to no relief.

## BACKGROUND

Petitioner, Damian Urdin (hereinafter referred to as "Urdin" or "Petitioner") and his five co-defendants were convicted by a trial jury of possession with intent to distribute five kilograms or more of cocaine in violation of 46 U.S.C. §1903(a)(g) and 18 U.S.C. §2 (Count

[1] See case number 8:00-cr-117-T-30MSS.

One) and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 46 U.S.C. §1903(j) (Count Two). (CR Dkt. #216). On July 20, 2001, this Court sentenced the Petitioner to a 235 month term of imprisonment to be followed by a five year term of supervised release.

The factual background[2] is as follows:

> In the early 1990's, Jose Castrillon-Henoa and Pedro Navarette operated a cocaine transportation business from their fishing company in Buenaventura, Colombia. Vessels from their company traveled from Buenaventura to 200 to 300 miles off the coast of Equador, where the crews would retrieve cocaine that had been dropped from airplanes into the sea. The vessels usually carried cement mix to seal compartment areas later where the cocaine was hidden. The vessels laden with cocaine then sailed for the coast of Mexico. Cocaine smuggled along the Castrillon-Henoa/Navarette route was ultimately destined for the United States.
>
> By 1998, the delivery method changed slightly in that the drugs were transported offshore by speed boats, where the drugs were then transferred to small vessels; the vessels in turn would deliver the drugs to larger vessels. The larger vessels then sailed north to Mexico, where the drugs were transferred to Mexican fishing vessels.
>
> On 4 April 2000, the *U.S.S. John A. Moore* -- a United States Navy frigate -- was patrolling the coastal areas of Equador and Colombia. A seven-member Coast Guard Enforcement Detachment Team from San Diego was aboard the *Moore*. A helicopter from the *Moore* returned with videotape of the *LayneyD* going northeast along the smuggling corridor. The *LayneyD* was riding low in the water as if carrying cargo and listing to one side. A skiff was tied topside of the *LayneyD*. The *LayneyD* is a fishing vessel; no fishing activity was seen. The *LayneyD* flew no national flag. The Coast Guard team determined that the *LayneyD* displayed drug smuggling characteristics.
>
> Upon reestablishing visual contact with the *LayneyD*, the Coast Guard attempted radio communications with her crew. When the Coast Guard team

[2] This summary of the factual background is taken verbatim from the Eleventh Circuit Court of Appeal opinion, case number 01-14142.

asked who was speaking on the radio, only incomprehensible answers were made. Quinones eventually identified himself as the master of the vessel. When asked about the name of the vessel, the Coast Guard saw a crewmember of the *LayneyD* lean over the bow to read the name of the vessel. Quinones was also evasive and inconsistent with his answers about the ship's destination and purpose of the voyage.

The Coast Guard noticed that no fishing equipment was visible on the *LayneyD*, except for a gill net. The skiff was relocated from topside of the *LayneyD* to tethered alongside her. The Coast Guard team worried that the crew of the *LayneyD* might try to scuttle the vessel to destroy evidence that might be aboard.

The Coast Guard team contacted its command center about boarding the *LayneyD*. The government of Colombia granted authorization to board the *LayneyD*. The vessel -- due to weather -- was boarded the next morning. The vessel was then located approximately 290 miles southwest of Equador in the Pacific Ocean. Upon boarding, the crew of the *LayneyD* was mustered on the stern of the vessel. The Coast Guard team noticed that the *LayneyD* was carrying bags of cement, rocks, and sand and a cement spreader. These things are unusual for a fishing vessel.

Petty Officer Cook of the Coast Guard team was previously assigned to a team dealing with fisheries and received training at the National Maritime Fisheries Service. From his training, Petty Officer Cook expected to find certain things aboard a vessel if used for fishing: fishing equipment, a large quantity of ice, and a large quantity of fish (based on the *LayneyD*'s time at sea). All of these items were absent from the *LayneyD*. The little fishing equipment that was aboard was rusted, damaged, unlubricated, and clearly unused. Petty Officer Cook later testified -- in essence -- that the *LayneyD* was too poorly equipped to be suitable to her fishing purpose.

Because the fuel tanks are a common location for hiding drugs, the Coast Guard queried Arroyo about the fuel tanks. Arroyo pointed out the location of the aft fuel tanks; and when asked directly, Arroyo indicated there was nothing in the starboard aft fuel tank. When the Coast Guard investigated the starboard aft fuel tank, they noticed an altered access plate to the tank and an unusual mesh material inside the sounding tube (a protruding pipe from the fuel tank used to measure the fuel quantity). The Coast Guard team inserted a metal rod into the sounding tube, and upon its extraction, they discovered a white powdery substance that later field-tested positive for cocaine. The crewmembers were placed in handcuffs.

Quinones was still piloting the *LayneyD*. When the Coast Guard informed Quinones that they had found cocaine on the vessel, Quinones nodded his head and answered, "Yeah, I know." Quinones then indicated -- by way of a sketch -- where more cocaine was located on the vessel. Quinones also provided the coordinates where the *LayneyD* was to meet with another vessel.

The Coast Guard found a patch of fresh, wet concrete that covered a hatch; beneath the hatch was more cocaine. The *LayneyD* was carrying 2,943 kilograms of cocaine, worth more than $40,000,000 wholesale in the United States. The Coast Guard team notified its command center of the discovery and sought a statement of "no objection" from Colombia to the seizure. The team was given permission to detain the vessel and to bring it to the Coast Guard base in St. Petersburg, Florida.

On direct appeal, Petitioner raised the following issues:

1. Whether the trial court erred in denying a judgment of acquittal for the government's failure to present evidence sufficient to support a conviction.

2. Whether the trial court erred in not dismissing the Indictment on the basis that 46 U.S.C. §1903 unconstitutionally removes the determination of the element "A vessel subject to the Jurisdiction of the United States" from the jury.

3. Whether the District Court erred in instructing the jury that the vessel in question was, as a matter of law, subject to the jurisdiction of the United States.

4. Whether the trial court erred in failing to dismiss the Indictment for violation of the agreement between the United States and Colombia to suppress illicit traffic by sea.

5. Whether the trial court erred in failing to dismiss the Indictment for lack of subject matter jurisdiction, violation of international law and due process.

The Eleventh Circuit affirmed the disposition of the case. United States v. Quinones, et al., 77 Fed. Appx. 504 (11th Cir. 2003). (CR Dkt. #357). The Supreme Court denied

Petitioner's petition for writ of certiorari on January 12, 2004. United States v. Urdin, 540 U.S. 1129 (2004). Petitioner then timely filed this §2255 motion raising the following grounds:

**Ground One:** The Supreme Court's retroactive decision in Crawford v. Washington, 124 S. Court 1354 (2004), should be applied to vacate Petitioner's conviction.

**Ground Two:** The "substantive" decision in Blakely v. Washington, 124 S. Court 2531 (2004) should be applied retroactively to vacate Petitioner's illegal sentence.

**Ground Three:** The Petitioner was denied his Sixth Amendment right to effective assistance of counsel at trial.

**Ground Four:** The Petitioner was denied his Sixth Amendment right to effective assistance of counsel on direct appeal.

## DISCUSSION

### Ground One

**The Supreme Court's retroactive decision in Crawford v. Washington, 124 S. Court 1354(2004), should be applied to vacate Petitioner's conviction.**

In support of Ground One, Petitioner argues that his conviction and sentence should be set aside because the Court erred at trial "by allowing Agent Cook and others to testify about numerous hearsay statements in violation of his Sixth Amendment due process right to confront the witness against him."

There are multiple problems with this argument. First, Petitioner is complaining about an evidentiary ruling during trial. The proper place to raise that issue is on direct appeal and, if it is not raised on appeal, it is defaulted. It cannot later be raised by way of collateral attack as Petitioner is now attempting to do (See Bousley v. United States, 523 U.S. 614 (1998))

unless a Petitioner shows good cause for his failure to have raised it on appeal and show actual prejudice. McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001), *cert. denied*, 122 S.Ct. 2362 (2002). For cause, Petitioner only argues that Crawford had not been decided at the time of his appeal (although he, in Ground Four, faults his attorney for not having foreseen the change in the law). And for "actual prejudice," Petitioner makes only the conclusory assertion that he would not have been convicted had the unidentified hearsay not been admitted.

Petitioner has not pointed to any specific fact that was elicited improperly that would have changed the outcome of the trial. He points generally to the statements that Quinones made to Cook, but that is of no avail. The Navy personnel had already found the cocaine in the fuel tanks prior to statements being made by Quinones. It is true that Quinones directed Officer Cook to another compartment hiding additional cocaine, but there is nothing to show that the additional cocaine would not have been found anyway. It was in a hidden compartment covered by fresh, wet cement. The Navy personnel had already found bags of cement, rocks, sand, and a cement spreader on board - items that, on a fishing vessel, would raise one's suspicion they were there to cover hidden compartments with cement.

Second, Petitioner does not identify the specific evidentiary ruling or rulings about which he now complains. This Court cannot be expected to sift through the entire trial transcript to ferret out evidentiary issues on his behalf. In his reply memorandum, on page eight, Petitioner points to a 53 page section of volume one of the trial transcript and says:

> However, because the record is replete with numerous instances of inadmissible hearsay testimony, as well as defendant counsel's objection thereto, it is rather

> difficult for Petitioner who is proceeding pro se to catalog or list the voluminous amount of hearsay testimony introduced at trial. In any event, a cursory reading of Agent Cook's trial testimony will show that Agent Cook testified to numerous inadmissible hearsay statements, particularly given to him by Segundo Quinones, in violation of the Crawford Doctrine.

Issues that are raised in only a vague, conclusory and speculative manner will not be entertained on collateral review. Walker v. Dugger, 860 F.2d 1010 (11th Cir. 1988).

Third, Crawford does not apply to all hearsay, only testimonial hearsay. It appears that Quinones' statements concerned his own personal knowledge of the presence of the drugs on board and are not testimonial in nature. But since Petitioner has not identified the particular statements he claims run afoul of Crawford, the Court does not reach this issue.

Fourth, Petitioner's argument is premised upon Crawford being retroactive. In the Eleventh Circuit, it is not retroactive. See Espy v. Massac, 443 F.3d 1362 (11th Cir. 2006).

These deficiencies are fatal to Petitioner's argument. Therefore, Ground One will be denied.

**Ground Two**

> **The "substantive" decision in Blakely v. Washington, 124 S. Court 2531 (2004) should be applied retroactively to vacate Petitioner's illegal sentence.**

In support of Ground Two, Petitioner argues that "his sentence should be vacated because he was held responsible for drug amounts not charged in the Indictment and proven to a jury beyond a reasonable doubt." This argument fails because it is both factually and legally incorrect.

Both charges in the Indictment charged five kilograms or more of cocaine. The jury made a specific finding of five kilograms or more of cocaine in respect to both charges. This Court heard extensive testimony at trial about the great quantity of cocaine found on board. And, the presentence report stated factually that the cocaine weighed 2,928 kilograms. At sentencing, Petitioner admitted the quantity contained in the presentence report. (CR Dkt. #294). It is entirely appropriate for a sentencing court to rely upon the drug quantity contained in the presentence report when that fact is admitted by a defendant. United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005). This argument also fails because, as Petitioner acknowledges, Blakely[3] and Booker[4] do not apply retroactively in the Eleventh Circuit. See Varela v. United States, 400 F.3d 864 (11th Cir. 2005). For these reasons, Ground Two will be denied.

## Ground Three

**The Petitioner was denied his Sixth Amendment right to effective assistance of counsel at trial.**

In support of Ground Three, Petitioner argues that "counsel for Petitioner failed to take the following step that a reasonable attorney providing effective representation would have taken: (1) "failed to raise an Apprendi v. Jersey, 120 S.Ct. 2348 (2000) challenge to Petitioner's sentence."

---

[3] United States v. Blakely, 542 U.S. 296 (2004).

[4] United States v. Booker, 543 U.S. 220 (2005).

This is the same argument as the Blakely/Booker claim in Ground Two except cast in the form of an ineffective assistance of counsel claim. It fails because an attorney is not required to predict a change in the law (see concurring opinion in United States v. Ardley, 273 F.3d 991 (11th Cir. 2001)) and, had counsel raised the argument, it would have failed for the reasons stated above as to Ground Two. Therefore, Ground Three will be denied.

**Ground Four**

**The Petitioner was denied his Sixth Amendment right to effective assistance of counsel on direct appeal.**

In support of Ground Four, Petitioner argues that his counsel was ineffective on appeal for failing to raise the Crawford and the Apprendi/Blakely/Booker issues. The United States Supreme Court rendered its Crawford decision in 2004. Petitioner's trial was in 2000 and his appeal was final in July of 2003. Petitioner's attorney was not ineffective because it is not ineffective assistance of counsel to not predict future changes in the law. Petitioner further argues that, whether or not his attorney should have predicted the Crawford decision, this Court should apply Crawford retroactively. This argument has been foreclosed by the Eleventh Circuit in Espy v. Massac, 443 F.3d 1362 (11th Cir. 2006) where it held that Crawford did not apply retroactively to cases on collateral review.

The Apprendi/Blakely/Booker argument has been addressed above. In brief, there was no Apprendi/Blakely/Booker error made in the sentencing because the drug quantity was admitted by Petitioner at sentencing and because Booker does not apply retroactively.

Therefore, this Ground will be denied.

## EVIDENTIARY HEARING

Petitioner is entitled to an evidentiary hearing only if his allegations, if proved, would establish his right to collateral relief. Townsend v. Sain, 372 U.S. 293 (1963). Here, it is apparent from the record that Petitioner is entitled to no relief, and therefore, an evidentiary hearing is not necessary.

## CONCLUSION

For the reasons set forth above, the Court concludes that Petitioner is entitled to no relief. It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) is DENIED.

2. The Clerk is to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on November 20, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2005\05-cv-84.deny 2255.wpd